UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENNY CHEUNG; and
GUANGYING CHEUNG,

          Plaintiffs,

  v.

ALLSTATE VEHICLE AND
PROPERTY INSURANCE
COMPANY,

          Defendant.

C22-1174 TSZ

ORDER

THIS MATTER comes before the Court on Defendant Allstate Vehicle and

Property Insurance Company's motion for partial summary judgment, docket no. 18, and

Plaintiffs Benny Cheung's and Guangying Cheung's cross-motion for partial summary

judgment, docket no. 28.  Having reviewed all papers filed in support of, and in

opposition to, the cross-motions, the Court enters the following order.

**Background**

Prior to the events at issue in this case, Plaintiffs lived in an apartment in

California.  Ex. G to Parrish Decl. at 17–20 (docket no. 20-7 at 5–6).  In July 2021,

Plaintiffs purchased real property in Mount Vernon, Washington (the "Property").

ORDER - 1

1 | Parrish Decl. at ¶¶ 2–3 (docket no. 20); Cheung Decl. at ¶ 4 (docket no. 21).  Plaintiffs

2 | did not have a concrete plan on when they would move to and live at the Property.  See

3 | Ex. G to Parrish Decl. at 33–37 (docket no. 20-7 at 9).  Plaintiffs asked Ms. Cheung's

4 | cousin, who lived in Seattle, to check the Property "every few weeks."  Ex. F to Parrish

5 | Decl. at 17, 36–41 (docket no. 20-6 at 5, 10–11); Ex. G to Parrish Decl. at 50–51 (docket

6 | no. 20-7 at 13).  Ms. Cheung's cousin checked on the Property on at least one occasion

7 | after Plaintiffs purchased the Property.  Ex. F to Parrish Decl. at 17, 36–41 (docket no.

8 | 20-6 at 5, 10–11); Ex. G to Parrish Decl. at 50–51 (docket no. 20-7 at 13).

9 | 　　　In August 2021, Plaintiffs spent one night at the Property.  Ex. F to Parrish Decl.

10 | at 23, 26–28 (docket no. 20-6 at 7–8); Ex. G to Parrish Decl. at 42–46 (docket no. 20-7 at

11 | 11–12).  During this visit, Plaintiffs brought some personal items including sleeping bags,

12 | clothes, and soap.  Ex. G to Parrish Decl. at 42–46 (docket no. 20-7 at 11–12).  Plaintiffs

13 | did not return to the Property until after November 20, 2021.  See Ex. G to Parrish Decl.

14 | at 46 (docket no. 20-7 at 12).

15 | 　　　On November 20, 2021, unidentified individuals broke into and damaged the

16 | Property, taking numerous items.  Parrish Decl. at ¶ 4; Cheung Decl. at ¶ 4; see also Ex.

17 | C to Parrish Decl. (docket no. 20-3).  That same day, Plaintiffs' neighbor called the

18 | police to report the incident.  Parrish Decl. at ¶ 5; Ex. D to Parrish Decl. (docket no. 20-

19 | 4).  A few days later, Ms. Cheung's cousin went to the Property to view the destruction.

20 | Ex. G to Parrish Decl. at 52–53 (docket no. 20-7 at 13).

21 | 　　　The Property, a single-family one-story home with a detached garage, detached

22 | carport, detached barn, and three sheds, was insured under a policy in effect from July 7,

23 |

ORDER - 2

1    2021, through July 7, 2022 (the "Policy"), which was issued by Allstate Vehicle and

2    Property Insurance Company ("Allstate").  Ex. A to Bonrud Decl. (docket no. 22-1 at 8).

3    On November 24, 2021, Mr. Cheung reported the loss to Allstate and made a claim under

4    the Policy.  Parrish Decl. at ¶ 6; Cheung Decl. at ¶ 3.  The "First Notice of Loss

5    Snapshot" prepared by Allstate describes Plaintiffs' loss as "HOUSE TO MOVE IN

6    HAD INTERIOR STOLEN."  Ex. B to Bonrud Decl. (docket no. 22-2 at 3).  In addition,

7    the First Notice of Loss Snapshot lists the peril as "Theft - On Premises" and the sub-

8    peril as "burglary."  Id.  The First Notice of Loss Snapshot further notes that "41+" items

9    were stolen.[1]  Id. at 4.

10         The Policy states in part:

11         **Dwelling Protection–Coverage A**
           **Property WE Cover Under Coverage A:**
12         1.    **Your dwelling**, including attached structures.  Structures connected
                 to **your dwelling** by only a fence, utility line, or similar connection
13               are not considered attached structures.
           2.    Construction materials and supplies at the **residence premises** for use
14               in connection with **your dwelling**.
           3.    Wall to wall carpeting fastened to **your dwelling**.
15         . . . .

16         **Other Structure Protection–Coverage B**
           **Property We Cover Under Coverage B:**
17         1.    Structures at the address shown on the Policy Declarations separated
                 from **your dwelling** by clear space.
18         2.    Structures at the address shown on the Policy Declarations connected
                 to **your dwelling** by only a fence, utility line, or similar connection.
19         3.    Construction materials and supplies at the **residence premises** for use
                 in connection with structures other than **your dwelling**.

20

21

22   [1] Plaintiffs note numerous occasions in which Allstate or the Skagit County Sheriff described the incident
     at the Property as a theft.  Pls.' Mot. at 4–5 (docket no. 28).

23

ORDER - 3

4.  Wall to wall carpeting fastened to **building structures**, other than **your dwelling**, at the address shown on the Policy Declarations.

Ex. A to Bonrud Decl. at 7 (docket no. 22-1 at 18).  The Policy further states in part:

**Losses We Cover Under Coverages A and B:**
**We** will cover sudden and accidental direct physical loss to the property described in **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** except as limited or excluded in this policy.

**Losses We Do Not Cover Under Coverages A and B:**
Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** of this policy, **we** do not cover any loss caused by or resulting in any manner from any of the following excluded events as described in 1 through 26 below.  Loss will be considered to have been caused by an excluded event if that event:
(a) directly and solely results in loss; or
(b) initiates a sequence of events that results in loss, regardless of the nature of any intermediate or final event in that sequence.
. . . .

16. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.
. . . .

24. Vandalism or malicious mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief.  A **dwelling** under construction is not considered vacant or unoccupied.

Ex. A to Bonrud Decl. at 7–10 (docket no. 22-1 at 18–21).  With respect to personal property,  the Policy states in part:

**Personal Property Protection–Coverage C**
**Property We Cover Under Coverage C:**
1. Personal property owned or used by an **insured person** anywhere in the world.  When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.
. . . .

**Property We Do Not Cover Under Coverage C:**
. . . .

ORDER - 4

8.      Vandalism and malicious mischief.

**We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

Ex. A to Parrish Decl. at 10–11 (docket no. 20-1 at 16–17).

Upon receiving Plaintiffs' claim, Allstate began investigating the facts of the loss. Parrish Decl. at ¶ 7. Allstate's investigation included taking photographs of the Property, reviewing the Skagit County Sheriff report, reviewing purchase and sale documents, and retaining a personal investigator to interview neighbors and canvas the area. Id. In December 2021, Allstate retained Rory Leid, an attorney, to conduct an examination under oath ("EUO") of each Plaintiff pursuant to the terms of the Policy. Id. at ¶ 8. Leid conducted the EUOs of Plaintiffs on January 7, 2022. Parrish Decl. at ¶ 11; Ex. F to Parrish Decl. (docket no. 20-6); Ex. G to Parrish Decl. (docket no. 20-7).

Plaintiffs submitted to Allstate estimates and bids from contractors to repair the house, garage, shop, outbuildings, and fixtures. Parrish Decl. at ¶ 10; Ex. E to Parrish Decl. (docket no. 20-5). Plaintiffs sought insurance coverage for roughly $200,000 in damages to the dwelling and structures, which included the cost to replace various appliances, and an additional $1,310 for the value of other stolen personal property, including certain tools and clothing. Interrogatory No. 15, Ex. B to Case Decl. (docket no. 19-2 at 5–6).

On February 10, 2022, Allstate denied Plaintiffs' insurance claim. Letter by Rory Leid, Ex. H to Parrish Decl. (docket no. 20-8). Allstate's denial letter focused only on

ORDER - 5

1   whether coverage was owed for the dwelling and other structures and did not cite to the

2   Policy provisions that discuss personal property.  Id.  With respect to the dwelling and

3   other structures, Allstate asserted that the Policy's vandalism exclusion applied because

4   the Property was vacant for more than 30 consecutive days before the loss.  Id.; see also

5   Def.'s Mot. at 7 (docket no. 18).  Allstate, however, offered no basis for denying

6   coverage as to any personal property, which Allstate now concedes includes stand-alone

7   appliances such as the washer, dryer, microwave, and refrigerator.[2]  Def.'s Mot. at 5 n.4

8   (docket no. 18).

9        In August 2022, Plaintiffs initiated this lawsuit, and they now assert claims for

10  breach of contract, violation of Washington's Consumer Protection Act ("CPA"),

11  insurance bad faith, negligence, and violation of Washington's Insurance Fair Conduct

12  Act ("IFCA").  See Compl. (docket no. 1); Am. Compl. at ¶¶ 21–25 (docket no. 16).

13  Allstate moves for partial summary judgment, asking the Court to rule that coverage is

14  not owed for the approximately $200,000 required to repair the dwelling and structures

15  and to replace certain "fixtures, utilities, appurtenances, systems, and furnishings," as

16  well as various appliances.  See Def.'s Mot. at 2 (docket no. 18).  Plaintiffs cross-move

17  for partial summary judgment, seeking findings that, as a matter of law, their dwelling

18  and structure losses are covered, Allstate breached the Policy in denying coverage, and

19

20

21

22  [2] The Court concludes that the term "stand-alone appliance" also encompasses Plaintiffs' toaster and
    coffee maker.  See Ex. Q to Bonrud Decl. (docket no. 22-17).

23

ORDER - 6

1   Allstate breached various provisions of the Washington Administrative Code ("WAC").

2   See Pls.' Mot. at 3 (docket no. 28).

3   **Discussion**

4   **A.      Summary Judgment Standard**

5          The Court shall grant summary judgment if no genuine issue of material fact exists

6   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

7   The moving party bears the initial burden of demonstrating the absence of a genuine issue

8   of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if

9   it might affect the outcome of the suit under the governing law.  Anderson v. Liberty

10  Lobby, Inc., 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

11  adverse party must present affirmative evidence, which "is to be believed" and from

12  which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the

13  record, taken as a whole, could not, however, lead a rational trier of fact to find for the

14  non-moving party on matters as to which such party will bear the burden of proof at trial,

15  summary judgment is warranted.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

16  475 U.S. 574, 587 (1986); see also Celotex, 477 U.S. at 322.  "On cross motions for

17  summary judgment, the Court evaluates the motions separately, 'giving the nonmoving

18  party in each instance the benefit of all reasonable inferences.'"  Eagle W. Ins. Co. v.

19  SAT, 2400, LLC, 187 F. Supp. 3d 1231, 1235 (W.D. Wash. 2016) (citation omitted).

20  **B.      Interpretation of an Insurance Policy**

21         The parties agree that Washington law governs interpretation of the Policy.  Def.'s

22  Mot. at 8–9 (docket no. 18); Pls.' Mot. at 10 (docket no. 28).  Under Washington law,

23

ORDER - 7

1  "[i]nterpretation of insurance policies is a question of law, in which the policy is

2  construed as a whole and each clause is given force and effect."  Overton v. Consol Ins.

3  Co., 145 Wn.2d 417, 424, 38 P.3d 322 (2002) (citation omitted).  "Insurance policies are

4  construed as contracts, so policy terms are interpreted according to basic contract

5  principles."  Allemand v. State Farm Ins. Companies, 160 Wn. App. 365, 368, 248 P.3d

6  111 (2011) (citation omitted).  The insurance policy "should be given a fair, reasonable,

7  and sensible construction as would be given to the contract by the average person

8  purchasing insurance."  Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95 776 P.2d 123

9  (1989) (citation omitted).  "If the language is clear, the court must enforce the policy as

10  written and may not create ambiguity where none exists."  Allemand, 160 Wn. App. at

11  368, 248 P.3d 111 (citation omitted).  "A clause is only considered ambiguous if it is

12  susceptible to two or more reasonable interpretations."  Id.  "If an ambiguity exists, the

13  clause is construed in favor of the insured."  Id.  The expectations of the insured,

14  however, cannot override the plain language of the contract.  Id.

15  **C.     Policy Coverage**

16       "Coverage under insurance policies, particularly all-risk policies, is interpreted

17  broadly."  Eagle, 187 F. Supp. 3d at 1235 (citation omitted).  "When determining

18  coverage, the initial burden of proof is on the insured to show that a loss falls within the

19  terms of the policy."  Id. (citation omitted).  "The burden then shifts to the insurer to

20  prove that the loss is not covered because of exclusionary provisions within the policy."

21  Id.  The Court addresses whether (1) Plaintiffs have demonstrated that their loss falls

22

23

ORDER - 8

1  within the terms of the Policy, and (2) Allstate has established that Plaintiffs' loss is not

2  covered because of the Policy's vandalism exclusion.

3          1.        **Nature of Plaintiffs' Loss**

4          Allstate contends that "Plaintiffs have not carried and cannot carry their burden of

5  establishing that the loss was theft and therefore potentially covered under the Policy."[3]

6  Def.'s Mot. at 9–11 (docket no. 18).  Allstate's argument lacks merit.  The Policy covers

7  "sudden and accidental direct physical loss to the property described in Dwelling

8  Protection–Coverage A and Other Structures Protection–Coverage B except as limited or

9  excluded."  Ex. A to Bonrud Decl. at 7 (docket no. 22-1 at 18).  Allstate does not dispute

10 that the loss at issue was sudden and accidental direct physical loss or that the Property

11 and detached garage, carport, barn, and sheds are the dwelling and structures covered

12 under the Policy.  Thus, Plaintiffs' loss is potentially covered under the insuring ("Losses

13 We Cover") provision of the Policy.  Whether Plaintiffs' loss should be characterized as

14

15

16

17 [3] In a footnote, Allstate maintains that "[e]ven if the loss is considered, in whole or in part, theft instead of vandalism, the loss is still excluded from coverage.  The Policy states that if a loss is caused by 'any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person', the loss is not covered."  Def.'s Mot. at 9 n.5 (docket no. 18).

18 According to Allstate, "Plaintiffs bought a house in rural Mount Vernon and left it vacant, unoccupied, and largely unattended without adequate security for nearly four months, just beckoning vandals to break-

19 in, destroy the house, and take away anything of value.  Plaintiffs' inaction substantially changed and increased the risk of loss to the Property, was the cause of the loss, and they certainly had the means and

20 control to prevent the loss by either moving into and living at the Property, having a tenant live there until they moved, and/or providing adequate security."  Id.  This argument, however, addresses only whether an exclusionary provision would preclude coverage rather than whether Plaintiffs' loss falls within the

21 terms of the Policy.  Because Allstate "did not move for summary judgment on that exclusion because its application is plainly an issue of fact," Def.'s Resp. at 17 (docket no. 31), the Court does not further

22 address the subject.

23

1   theft or vandalism is more appropriately analyzed under step two, in connection with the

2   exclusion that Allstate bears the burden of proving is applicable.

3          **2.        Exclusion for Vandalism**

4          Allstate has invoked the vandalism exclusion only with respect to the dwelling and

5   other structures themselves, and not as to any personal property contained within those

6   buildings, including various appliances.[4]  Allstate argues that the damage to "fixtures,

7   utilities, appurtenances, systems, and furnishings" in or attached to the dwelling and other

8   structures resulted from vandalism, not theft, and it is not covered because "the property

9   was vacant or unoccupied for more than 30 consecutive days immediately before the

10  loss."  Def.'s Mot. at 11 (docket no. 18) (citing Ex. A to Parrish Decl. at 14–16 (docket

11  no. 20-1)).  Plaintiffs do not dispute that the Property was vacant or unoccupied for more

12  than 30 consecutive days before their loss.  Pls.' Resp. (docket no. 23); Pls.' Mot. (docket

13  no. 28).  Thus, the question before the Court is whether the event that "(a) directly and

14  solely result[ed] in loss; or (b) initiate[d] a sequence of events that result[ed] in loss,

15  regardless of the nature of the intermediate or final event in that sequence," Ex. A to

16

17

---

18

19  [4] Plaintiffs seek coverage as to their personal property losses. See Pls.' Mot. at 16–17 (docket no. 28).  In
    its denial letter, Allstate did not cite to any provision that applies to personal property. See Ex. H to
20  Parrish Decl. (docket no. 20-8).  Washington law "preclude[s] insurers from introducing new or changed
    bases for denying insurance coverage once litigation has begun." Karpenski v. Am. Gen. Life Cos., 999
    F. Supp. 2d 1235, 1245 (W.D. Wash. 2014).  Allstate's inclusion of a "reservation of rights" in its denial
21  letter does not allow it at this juncture to add additional reasons for denying coverage. See id. at 1245–46.
    Thus, Allstate cannot deny coverage for Plaintiffs' personal property losses, and the Court concludes, as a
22  matter of law, that the theft of Plaintiffs' stand-alone appliances and personal effects is a covered loss
    under the Policy.  Plaintiffs' cross-motion for summary judgment is GRANTED as to personal property.

23

ORDER - 10

1   Bonrud Decl. (docket no. 22-1 at 18), was theft (which is covered under the Policy) or

2   vandalism (which is not).

3           **i.**     **Definitions**

4       The Policy does not define either theft or vandalism.  "Undefined terms are given

5   their 'plain, ordinary, and popular' meaning."  Am. States Ins. Co. v. Ranch San Marcos

6   Properties, LLC, 123 Wn. App. 205, 210, 97 P.3d 775 (2004) (citation omitted).  Allstate

7   maintains that the parties agree on the definitions of theft and vandalism, see Def.'s

8   Reply at 7 (docket no. 24), but Allstate's definition of theft, which requires that the stolen

9   items be "unattached to the realty," is limited to personal property, see id. at 5–6, and

10  Plaintiffs do not similarly restrict their understanding of theft.  Plaintiffs offer the

11  following definitions of theft: (1) "the act of stealing" or "an unlawful taking (as

12  embezzlement or burglary) of property"; (2) the "felonious taking and removing of

13  another's personal property with the intent of depriving the true owner of it; larceny" or

14  "any act or instance of stealing, including larceny, burglary, embezzlement, and false

15  pretenses"; and (3) "to wrongfully obtain or exert unauthorized control over the property

16  or services of another or the value thereof, with intent to deprive him or her of such

17  property or services."  Pls.' Mot. at 11–12 (docket no. 28) (quoting Merriam-Webster

18  Online Dictionary, Black's Law Dictionary, and RCW 9A.56.020(1)(a)).

19      Allstate argues that "[t]he severance and destruction of fixtures cannot, by

20  definition, be theft."  Def.'s Reply at 5–6 (docket no. 24) (citing Benson Holding Corp. v.

21  N.Y. Prop. Ins. Underwriting Ass'n, 124 Misc. 2d 955, 955–56, 478 N.Y.S.2d 570 (N.Y.

22  Civ. Ct. 1984), and Acorn Inv. Co. v. Mich. Basic Prop. Ins. Ass'n, No. 284234, 2009

23

ORDER - 11

1  WL 2952677, at *2 (Mich. Ct. App. Sep. 15, 2009)).  Neither of the authorities cited by

2  Allstate are binding or involve Washington law, and the latter opinion is unpublished.

3  Moreover, Benson and Acorn involve the reverse of the situation in this case; in both

4  cases, vandalism was a covered peril, but theft was not.[5]  Benson and Acorn concerned

5  commercial or rental properties as to which the insureds had different expectations than

6  an ordinary purchaser of a homeowner's policy, which is generally understood to insure

7  against theft of items from the home.[6]  See Am. States, 123 Wn. App. at 210

8  _____

9  [5] In Benson, perpetrators broke into the plaintiff's building, severed wires leading to an elevator control
panel, and removed the elevator control panel.  124 Misc. 2d at 955–56.  The Civil Court of the City of
10  New York concluded that the plaintiff's loss was not subject to the theft exclusion, observing that

11          it would seem that any forceful or violent severing and removal of property that had been
           affixed to the premises constitutes vandalism and the loss of the property thus removed is
           not excluded as pilferage, theft, etc.  It is of course philosophically arguable that, where
12          the destruction to the freehold is relatively minor and the gravamen of the loss is the value
           of the removed equipment, what is involved is essentially theft and not vandalism.
13          However, it could be argued with equal force that the exclusion would be generally
           understood by a lay person purchasing this type of policy to refer only to property that is
14          not attached to the freehold. (A much closer case would be presented had the control panel
           been extracted simply by removing some screws.)

15  Id. at 956–57.  In Acorn, the Michigan Court of Appeals held that the perpetrators' acts of breaking
plumbing fixtures, a water meter, and a water supply line, leaving no way to stop water from flowing, was
16  vandalism within the meaning of the policy.  The Acorn Court noted that the evidence showing those
items were also stolen was not material because the claim at issue was "for property damage caused by
17  the removal of the items," and not for the stolen items themselves.  2009 WL 2952677, at *2.  Contrary to
Allstate's contention, neither Benson nor Acorn stand for the proposition that severance and removal of a
fixture cannot be considered theft.
18
[6] Like Allstate, Plaintiffs have cited decisions involving commercial property insurance.  See Certain
19  Underwriters at Lloyds, London v. Law, 570 F.3d 574 (5th Cir. 2009) (concluding that damage to air-
conditioning units was within the theft exclusion and not covered because the damage was done solely in
20  furtherance of stealing copper); see also Smith v. Shelby Ins. Co. of Shelby Ins. Grp., 936 S.W.2d 261
(Tenn. Ct. App. 1996) (same).  In Law, the Fifth Circuit applied Texas law and "discern[ed] no possibility
that the parties intended to extend the theft [exclusion]'s coverage of damage incidentally caused by
21  burglars while entering or leaving the building to include damage caused by rooftop (exterior) thieves to
freestanding air-conditioning units."  570 F.3d at 578.  In Smith, the Tennessee Court of Appeals
22  similarly focused on the intent of the insurer and the insured, finding "significant" the policy language
excluding damage "[c]aused by or resulting from theft."  936 S.W.2d at 265.  The Smith Court concluded

23

ORDER - 12

1   (Washington courts read insurance contracts "in a fair, reasonable, and sensible manner

2   as it would be understood by the average person, giving effect to each provision of the

3   policy").  The Policy in this case offered Plaintiffs no reason to doubt that items affixed

4   to the Property would be covered if stolen.  Indeed, the Policy explicitly covers theft of

5   "wall to wall carpeting fastened to" the Property unless an exclusion applies.  Ex. A to

6   Parrish Decl. (docket no. 20-1 at 14).  Thus, the Court rejects Allstate's theory that the

7   removal of items affixed to the Property cannot be theft.

8                    ii.        **Characterization of Loss**

9       Having concluded that the theft of "fixtures, utilities, appurtenances,

10  systems, and furnishings" is a factual and legal possibility, the Court turns to the

11  question of whether particular items at issue in this matter were stolen or vandalized.

12      Although the authorities cited by the parties concern commercial properties, rather

13  than residences, relate to policies that exclude theft, as opposed to vandalism, and reach

14  varying results, the courts involved generally applied the same analysis, i.e., determining

15  whether the loss at issue was caused by theft or vandalism by examining the purpose of

16  the criminal behavior -- to steal something or just to destroy it.  See Law, 570 F.3d at

17  578–79; Smith, 936 S.W.2d 265–66; see also Mercedes Zee Corp. LLC v. Seneca Ins.

18  Co., 151 F. Supp. 3d 255, 260 (D. Conn. 2015) (denying both parties' motions for

19  summary judgment, reasoning that the wrongdoer's initial purpose when entering the

20  _____

21  that this wording precluded coverage for the ripping out of electric wiring, plumbing pipes, and condenser
coils, the purpose of which was to steal copper components from an air-condition system.  Id.  Law and
22  Smith are as distinguishable as Allstate's authorities, Benson and Acorn.

23

ORDER - 13

1  building was not dispositive and that "[w]hat is required is an *item-by-item* consideration

2  of the property that has been lost or damaged to determine if specific loss or damage is

3  the result of an act of vandalism (covered) or an act of theft (not covered)").

4       In this case, the before-and-after photographs of the Property demonstrate that the

5  "fixtures, utilities, appurtenances, systems, and furnishings" were stolen, not vandalized.

6  Compare Ex. J to Bonrud Decl. (docket no. 22-10), with Ex. C to Parrish Decl. (docket

7  no. 20-3).  The cabinets, sinks, wood flooring, and carpet are now missing from the

8  Property, and the purpose of the damage done to the interior of the Property was to

9  effectuate the theft, and not to willfully or maliciously destroy or deface the walls, floors,

10  and the like, which would be vandalism.  See Def.'s Mot. at 12 (docket no. 18); Pls.'

11  Mot. at 11 (docket no. 28).  Thus, the Court concludes, as a matter of law, that Allstate

12  may not rely on the vandalism exclusion to deny coverage as to Plaintiffs' losses

13  resulting from theft of "fixtures, utilities, appurtenances, systems, and furnishings."

14       **3.       Exclusion for Increased Risk**

15       In its denial letter, Allstate also cited to the increased risk of loss provision, which

16  precludes coverage when loss is caused by "[a]ny substantial change or increase in

17  hazard, if changed or increased by any means within the control or knowledge of an

18  insured person."  Letter by Rory Leid, Ex. H to Parrish Decl. (docket no. 20-8).

19  According to Allstate, Plaintiffs' decision to leave the Property vacant for several months

20  increased the risk of loss, and Plaintiffs' loss would not have occurred if Plaintiffs were

21  living at the Property.  Def.'s Resp. at 17–19 (docket no. 31).  In seeking summary

22  judgment on the issue, Plaintiffs argue that the increased risk exclusion does not apply

23

because (1) the Property "was unoccupied at the time of the purchase and remained so until the date of loss"; (2) the increased risk of loss provision was not a basis for denial; and (3) Allstate cannot "show that the alleged substantial change or increase in hazard caused the loss." Pls.' Mot. at 25–26 (docket no. 28) (emphasis omitted). Plaintiffs' second assertion lacks merit because Allstate did cite the increased risk of loss provision in its denial letter, and Allstate will be permitted to assert that provision as a defense to coverage. Letter by Rory Leid, Ex. H to Parrish Decl. (docket no. 20-8). As to Plaintiffs' first and third contentions, the Court also agrees with Allstate that genuine disputes of material fact preclude summary judgment, and Plaintiffs' cross-motion seeking to bar Allstate from asserting the increased risk of loss exclusion is DENIED.[7]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)      Allstate's motion for partial summary judgment, docket no. 18, is DENIED.

(2)      Plaintiffs' cross-motion, docket no. 28, is GRANTED in part and DENIED in part, as follows:

(a)      The Court concludes, as a matter of law, that (i) Allstate failed to timely and appropriately deny coverage for Plaintiffs' personal property losses, and thus, it may not do so in this litigation; (ii) Plaintiffs' stand-alone appliances

---

[7] Because factual questions preclude any decision regarding coverage as to losses relating to "fixtures, utilities, appurtenances, systems, and furnishings," the Court cannot decide, as a matter of law, whether Allstate breached the Policy or any WAC provisions. As to Plaintiffs' related claims, their motion for summary judgment is DENIED.

ORDER - 15

1   and personal effects are personal property; and (iii) the theft of Plaintiffs' stand-

2   alone appliances and personal effects is a covered loss under the Policy.

3         (b)    The Court concludes, as a matter of law, that Allstate may not rely

4   on the vandalism exclusion in the Policy to deny coverage as to Plaintiffs' losses

5   resulting from theft of "fixtures, utilities, appurtenances, systems, and

6   furnishings."

7         (c)    Plaintiffs' cross-motion for partial summary judgment is otherwise

8   DENIED.

9   (3)    The Clerk is directed to send a copy of this Order to all counsel of record.

10   IT IS SO ORDERED.

11   Dated this 28th day of December, 2023.

12

13   _____

14   Thomas S. Zilly
     United States District Judge

15

16

17

18

19

20

21

22

23

ORDER - 16